FILED

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA DEC 27  AM 10: 44
## TAMPA DIVISION

US DISTRICT COURT
DISTRICT OF FL DR

EUGENE HARDIN,                    )
                                  )
              Plaintiff,          )          CASE No.: 8:21-cv2980-mss-aep
     vs.                          )
                                  )          **COMPLAINT**
OAKLEY TRANSPORT INC.,            )          **JURY TRIAL DEMAND**
                                  )
              Defendant.          )

## NATURE OF THE ACTION

1.     This is an action under Title I of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Amendments Act of 2008, and Title I of the Civil Rights Act of 1991 to eradicate unlawful employment practices on the basis of disability and to provide appropriate relief and monetary damages to the Plaintiff, who was adversely affected by such practices.

The Plaintiff Eugene Hardin ("Mr. Hardin"), a qualified individual who is otherwise disabled, alleges that Defendant, Oakley Transport, Inc. discriminated against him in violation of the Americans with Disabilities Act, as amended, by terminating his employment because of his disability, (walking impairment), and by failing to provide him a

1

reasonable accommodation of returning to work with a temporary restriction after a medical leave of absence in violation of the ADA, and FCRA.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq., 42 U.S.C. § 12111 et. seq., Section 107(a) of the ADA of 1990, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a.

3.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to consider claims under the Florida Civil Rights Act of 1992, §760.01, et seq. ("FCRA"). The amount in controversy exceeds $100,000.00.

4.      Venue in the United States District Court for the Middle District of Florida, Tampa Division, is proper in that this is the district

in which a substantial part of the acts and omissions giving rise to the claims occurred.

5.      Venue in the United States District Court for the Middle District of Florida, Tampa Division is proper in that Defendant's witnesses are located at its corporate headquarters located in Lake Wales, Florida, where Defendant administered and maintained employment records relevant to the discriminatory and unlawful employment practices complained of herein.

6.      At all relevant times, the employment practices alleged to be unlawful were committed within the State of Florida, County of Polk, City of Lake Wales, thus venue is proper "in any judicial district in the State in which unlawful employment practices is alleged to have been committed." (Section 706(f)(3) of Title VII, 42 U.S.C. §2000e-5(f)(3)).

7.      On July 20, 2020, Mr. Hardin filed a charge of disability discrimination in employment, with the Tampa Field Office of the Equal Employment Opportunity Commission ("EEOC"), and with the Florida Commission on Human Relations ("FCHR") under Charge number 511-2020-03664.  A Notice of Right to Sue letter was issued to Mr. Hardin from the EEOC on September 29, 2021.  Within ninety days of receiving

the Notice of Right to Sue from the EEOC, and after 180 days passed without receiving a determination letter from the FCHR, Mr. Hardin filed suit against the defendant.

## PARTIES

8.    Plaintiff, Eugene Hardin ("Mr. Hardin"), at all relevant times, was and is a licensed commercial truck driver and can be contacted at P.O. Box 390903, Snellville, Georgia, 30039.

9.    Defendant, Oakley Transport, Inc. ("Oakley Transport"), is a corporation duly organized and existing under the laws of the State of Florida, maintaining its principal place of business and human resources department at its corporate headquarters located at 101 ABC Rd, Lake Wales, Polk County, Florida, 33859.

10.   At all relevant times, Defendant continuously has had at least seventy-five (75) employees, and has continuously been an employer engaged in an industry affecting commerce under section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), as amended, which incorporates by reference Section 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

11.   At all times material herein, the Defendant is and has been a "person" and "employer" as defined under the ADA, FCRA, Title VII, and is accordingly subject to the provisions of each said act.

12.   At all relevant times, the Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2), as amended and employs over 201 employees throughout the U.S.

13.   At all relevant times, the Defendant committed the discriminatory practices and unlawful acts complained of herein at, or through, its Human Resources Department ("Human Resources Department" or "HR"") in Lake Wales, Florida.

14.   At all times relevant hereto, the Defendant was acting through its agents, servants, contractors, administrators, claims adjusters, carriers, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of the Defendant.

15.   At all times relevant hereto, the Defendant never paid unemployment insurance (UI) in the State of Georgia for Mr. Hardin during his entire employment with defendant.

16. At all times relevant hereto, the Defendant paid unemployment insurance (UI) in the State of Florida for Mr. Hardin during his employment with Defendant.

17. At all times relevant hereto, the Defendant never issued a State of Georgia, Department of Labor Separation Notice (DOL-800) to Mr. Hardin from January 1, 2018 to December 31, 2020.

18. At all times relevant hereto, the Defendant never reported to the Georgia Department of Human Services (DHS), that Mr. Hardin was a new hire during Mr. Hardin's entire employment with Defendant.

19. In September 2018, the Defendant, its agents, or claims adjusters, reported Mr. Hardin's 9/1/2018 work-related injury to the State of Florida.

20. At all times relevant hereto, Mr. Hardin was received indemnity benefits for his 9/1/2018 injury in accordance with the State of Florida workers compensation laws (440 statutes).

## **BACKGROUND**

21.   Defendant Oakley Transport is a trucking company that operates semi-tractor tankers and semi-tractor trailers to transport products in the United States.

22.   Mr. Hardin is a qualified commercial truck driver licensed to operate a semi-tractor tanker or semi-tractor trailer to transport products in the United States.

23.   In January, 2018, Mr. Hardin was hired by defendant to transport products in the United States.

24.   Mr. Hardin's job duties, while working for defendant, entailed driving a semi-tractor tanker to a pick-up facility that pumped a liquid product, such as peanut oil, into his tanker while he waited in his truck.

25.   Mr. Hardin then transported the liquid product to a delivery facility that pumped the liquid product out of his tanker, while he waited in his truck.

26.   Occasionally Mr. Hardin hooked-up a 2-inch hose in diameter to a mechanical pump on his tanker that suctioned the liquid product out of the tanker, while he waited in his truck.

27.   Mr. Hardin's tanker-driver job duties did not require him to load or unload, nor walk, stand, bend, crawl, or knell excessively.

## STATEMENT OF CLAIMS

28.   On or about September 1, 2018, Mr. Hardin sustained a very severe on-the-job injury to his left knee exiting his semi-truck in loose uneven gravel.  The painful injury to Mr. Hardin's knee caused him to walk with a very noticeable limp because he could not fully extend his knee. The severe injury to Mr. Hardin's knee substantially limited and affected his daily walking throughout his employment with defendant. But even though Mr. Hardin suffered a severe on-the-job injury to his knee, he did not take any time off, because he was able to satisfactorily perform all the essential functions of his job duties, with or without reasonable accommodations.

29.   On or about September 6, 2018, the human resources department ("HR") removed Mr. Hardin from his tanker-driver job and told him that because he injured his knee on-the-job, he had to be evaluated by a company approved doctor before he could return to his tanker-driver job duties.  HR sent Mr. Hardin to an urgent care facility for evaluation.

8

30.    The doctor at the urgent care facility examined Mr. Hardin's severely injured knee and told him not to drive a commercial vehicle until his injured knee was further evaluated by an orthopedic doctor.

31.    On or about September 11, 2018, HR's claims adjuster sent Mr. Hardin to have an MRI taken of his severely injured left knee.  The MRI was taken and showed a meniscus tear, an anterior cruciate ligament sprain, a medial collateral sprain, and a large joint effusion.

32.    On or about September 18, 2018, HR's claims adjuster sent Mr. Hardin to an orthopedic doctor for evaluation and treatment. The orthopedic doctor reviewed Mr. Hardin's MRI and examined his severely injured knee, that caused him to walk with a noticeable limp, and told Mr. Hardin that he tore the medial meniscus in his knee.  The doctor prescribed knee surgery, and for Mr. Hardin not to return to work.

33.    Mr. Hardin via the doctor, requested HR's adjuster to approve the knee surgery and requested as a reasonable accommodation, 4-6 weeks off work after surgery to fully recover.

34.    But HR's adjuster refused to authorize the knee surgery and Mr. Hardin was kept on a Florida workers compensation disability leave of absence.

35.    Subsequently, HR agreed to allow Mr. Hardin to return to work as a tanker-driver because his job-duties did not require him to load or unload, nor walk, bend, crawl, knell, or stand, excessively.

36.    In October 2018, Mr. Hardin returned to work as a taker-driver but had difficulty using the clutch in his semi-tractor because of the torn meniscus in his left knee.   Mr. Hardin made a reasonable accommodation request to change trucks from a manual truck, to an automatic truck to eliminate usage of the clutch with his severely injured left knee.

37.    The defendant regarded Mr. Hardin as disabled because of the torn meniscus in his knee that substantially limited and affected his walking. Therefore, defendant approved Mr. Hardin's request for a reasonable accommodation, and assigned him to a semi-truck that was an automatic to facilitate his tanker driver job-duties.

10

38.     Subsequently the doctor prescribed physical therapy sessions for Mr. Hardin that he regularly attended for his injured knee (from October 2018, thru August 2019).

39.     In January 2019, the doctor reexamined Mr. Hardin's injured knee and Mr. Hardin, via the doctor, requested HR's adjuster to authorize his knee surgery.  But HR's adjuster refused to authorize the knee surgery and HR allowed Mr. Hardin to continue working as a tanker-driver because his physical impairment did not prevent him from satisfactorily performing all the essential functions of his job-duties.

40.     Mr. Hardin, with his walking physical impairment, was even paid bonuses for his satisfactory performance as a tanker-driver in the months of February, March, April, June, and August of 2019.

41.     Subsequently, in the summer of 2019, Mr. Hardin went on an approved medical leave of absence because of his on-the-job knee injury that caused him pain and substantially limited and affected his walking.

42.     Defendant paid Mr. Hardin Florida workers' compensation disability income benefits while he was on the medical leave of absence.

11

43.   Subsequently, Mr. Hardin demanded HR's adjuster to authorize his knee surgery but the adjuster refused.

44.   Mr. Hardin filed a Florida workers' compensation claim against defendant on or about August 19, 2019.

45.   On or about September 13, 2019 Mr. Hardin, via the doctor, requested authorization for his knee surgery, and HR to provide as a reasonable accommodation:

(a)   4-6 weeks of rehabilitation after knee surgery that included

(b)   2-3 weeks of light duty work (no repetitive loading or unloading > 35 pounds, no excessive walking, bending or crawling) to fully recover.

46.   But HR denied Mr. Hardin's reasonable accommodation request and refused to allow him to return to work as a tanker-driver.

47.   On or about October 3, 2019, 13-months after Mr. Hardin severely injured his knee, HR's claims adjuster authorized his knee surgery because of the workers' compensation claim Mr. Hardin filed against defendant.

12

48.    On or about October 4, 2019, the doctor cleared Mr. Hardin to return to work light duty.  Mr. Hardin, via the doctor, requested as a reasonable accommodation, HR to provide the following:

(a)    4-6 weeks of rehabilitation after knee surgery that included

(b)    2-3 weeks of light duty work (no repetitive loading or unloading > 35 pounds, no excessive walking, bending or crawling) to fully recover.

49.    In a letter dated October 10, 2019, HR denied Mr. Hardin's reasonable accommodation request and demanded that he return to work as a custodian at a non-affiliated business starting on October 21, 2019 because of his disability that was caused by the on-the-job knee injury.

50.    The October 10, 2019 letter form HR expressed to Mr. Hardin that if he did not work at the non-affiliated business as directed, his workers compensation disability wages would be terminated.

51.    HR further expressed in the October 10, 2019 letter that they were not going to allow Mr. Hardin to return to work as a tanker-driver because they regarded him as disabled.

52.   On or about October 21, 2019, Mr. Hardin reported to the unaffiliated thrift-store as directed by HR and was turned away.

53.   On or about October 23, 2019, HR terminated Mr. Hardin because of his disability.

54.   HR terminated Mr. Hardin and offered him a deal that was rejected.

55.   Mr. Hardin, a qualified individual who was otherwise disabled, was able to satisfactorily perform all the essential functions of his tanker-driver job duties with or without a reasonable accommodation.

56.   In October 2019, HR discriminated against Mr. Hardin when they treated him less favorably than similarly situated non-disabled employees by refusing to allow him to work as a tanker-driver because of his physical impairment.

57.   In October 2019, HR discriminated against Mr. Hardin by refusing to allow him to return to work as a tanker-driver because they regarded him as disabled.

58.   Mr. Hardin alleges that Defendant, Oakley Transport, Inc. discriminated against him in violation of the Americans with Disabilities

Act, by refusing to provide him a reasonable accommodation, in violation of Section 102(a) of the ADA, 42 U.S.C. §§12111,12112, and the FCRA of 1992, §760.01, et seq.

59.    In October 2019, HR discriminated against Mr. Hardin by terminating his employment because of his disability, even though he was able to satisfactorily perform all the essential functions of his tanker-driver job duties, with or without a reasonable accommodation.

**COUNT ONE**
**VIOLATION OF THE**
**AMERICANS WITH DISABILITY ACT (ADA)**

60.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 59 above as if set forth in full herein.

61.    At all times material hereto, Mr. Hardin was an employee and Defendant his employer, covered by and within the meaning of Title I of the Americans with Disabilities Act of 1990 (ADA), 42 USC 12111(5)(a).

62.    At all times material hereto, Mr. Hardin was and is an individual with a disability within the meaning of §3(2) of the ADA, 42 USC 12102(2).

63.   Mr. Hardin is a qualified individual with a disability as that term is defined in the ADA, 42 USC 12111(8).

64.   Mr. Hardin was and is an individual with a physical impairment that substantially limits and interferes with one or more major life activities, including walking.

65.   Mr. Hardin has a record of a physical impairment that substantially limits one or more major life activities.

66.   Defendant was aware of Mr. Hardin's severe knee injury.

67.   Defendant regarded Mr. Hardin's severe knee injury as a physical impairment that substantially limited one or more major life activities.

68.   Mr. Hardin's disability, and/or record of a disability, and/or perceived disability was a factor that made a difference in Defendants' decision to harass, demote, and terminate his driving job duties.

69.   Defendant terminated the employment of Mr. Hardin, an employee with a disability, rather than providing him with a reasonable accommodation, in violation of the ADA.

70.    Mr. Hardin's disability, and/or record of a disability, and/or perceived disability was a factor that made a difference in Defendants' decision to terminate his employment.

71.    Mr. Hardin is a qualified individual with a disability who was and is able to perform the essential functions of his tanker-driver position with Defendant, with or without a reasonable accommodation.

72.    Defendant was predisposed to discriminate on the basis of disability and/or record of a disability and/or perceived disability and acted in accordance with that predisposition.

73.    Defendant terminated Mr. Hardin's employment because of his disability, within the meaning of the ADA, in violation of the statute.

74.    The practices complained of herein deprived Mr. Hardin of equal employment opportunities by denying him a job because of his disability.

75.    The unlawful employment practices complained of herein were committed with malice or with reckless indifference to Mr. Hardin's federally protected rights.

76.    The actions of Defendant were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Mr. Hardin.

77.    As a direct and proximate result of Defendants' violation of Mr. Hardin 's rights as alleged, Mr. Hardin's terms, conditions, and privileges of employment were adversely affected.

78.    As a direct and proximate result of Defendants' wrongful acts and omissions, Mr. Hardin has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of his choice.

## COUNT TWO

## VIOLATION OF THE

## FLORIDA CIVIL RIGHTS ACT OF 1992 (FCRA)

79.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 59 above as if set forth in full herein.

18

80.   At all times material hereto, Mr. Hardin was an employee and Defendant his employer, covered by and within the meaning of the Florida Civil Rights Act of 1992, §760.01, et seq. ("FCRA").

81.   At all times material hereto, Mr. Hardin was and is an individual with a disability within the meaning of the Florida Civil Rights Act of 1992, §760.01, et seq.

82.   Mr. Hardin is a qualified individual with a disability as that term is defined in the Florida Civil Rights Act of 1992, §760.01, et seq.

83.   Mr. Hardin was and is an individual with a physical impairment that substantially limits and interferes with one or more major life activities, including walking.

84.   Mr. Hardin has a record of a physical impairment that substantially limits one or more major life activities.

85.   Defendant was aware of Mr. Hardin's severe knee injury.

86.   Defendant regarded Mr. Hardin's severe knee injury as a physical impairment that substantially limited one or more major life activities.

87.   Mr. Hardin's disability, and/or record of a disability, and/or perceived disability was a factor that made a difference in Defendants' decision to harass, demote, and terminate his driving job duties.

88.   Defendant terminated the employment of Mr. Hardin, an employee with a disability, rather than providing him with a reasonable accommodation in violation of the FCRA.

89.   Mr. Hardin's disability, and/or record of a disability, and/or perceived disability was a factor that made a difference in Defendants' decision to terminate his employment.

90.   Mr. Hardin is a qualified individual with a disability who was and is able to perform the essential functions of his tanker-driver position with Defendant, with or without a reasonable accommodation.

91.   Defendant was predisposed to discriminate on the basis of disability and/or record of a disability and/or perceived disability and acted in accordance with that predisposition.

92.   Defendant terminated Mr. Hardin's employment because of his disability, within the meaning of the FCRA, in violation of the statute.

93.   The practices complained of herein deprived Mr. Hardin of equal employment opportunities by denying him a job because of his disability.

94.   The unlawful employment practices complained of herein were committed with malice or with reckless indifference to Mr. Hardin's federally protected rights.

95.   The actions of Defendant were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Mr. Hardin.

96.   As a direct and proximate result of Defendants' violation of Mr. Hardin 's rights as alleged, Mr. Hardin's terms, conditions, and privileges of employment were adversely affected.

97.   As a direct and proximate result of Defendants' wrongful acts and omissions, Mr. Hardin has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of his choice.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully request that this Court grant him the following relief:

a.     Declaratory relief, including but not limited to a declaration that Defendant discriminated against Plaintiff in violation of the ADA and FCRA;

b.     An injunction ordering Defendant to reinstate Plaintiff to his prior position of employment with defendant, with such retroactive promotions and benefits as Plaintiff would have received had he not been terminated;

c.     Back pay with interest;

d.     Payment of interest on all back pay recoverable;

e.     Compensatory and consequential damages, including for emotional distress, suffering, inconvenience, against defendant in amounts to be determined at trial;

f.     Punitive damages against defendant in amounts to be determined at trial;

g.     Attorneys' fees and costs; and

h.     Any other relief that the Court deems proper.

Respectfully Submitted,

Eugene Hardin
Plaintiff
Po Box 390903
Snellville, Georgia 30039
404-312-8087