## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**EUGENE HARDIN,**

     **Plaintiff,**

**v.**                                           **Case No: 8:21-cv-2980-MSS-AEP**

**OAKLEY TRANSPORT, INC. and**
**OAKLEY TRANSPORTATION**
**GROUP INC.,**

     **Defendants.**

_____

## <u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Motion for Partial Judgment on the Pleadings, (Dkt. 137), and Defendants' response thereto. (Dkt. 139) Also before the Court is Defendants' Amended Motion for Summary Judgment, (Dkt. 146), Plaintiff's response thereto, (Dkt. 162), and Defendants' reply, (Dkt. 166), as well as Plaintiff's Motion for Partial Summary Judgment, (Dkt. 165), Defendants' response thereto (Dkt. 170), and Plaintiff's reply. (Dkt. 174) Upon consideration of all relevant filings, case law, and being otherwise fully advised, Plaintiff's Motion for Partial Judgment on the Pleadings, (Dkt. 137), is **DENIED**, Defendants' Amended Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

# I.    BACKGROUND

## A.    Procedural Background

On December 27, 2021, Plaintiff Eugene Hardin, proceeding *pro se*, filed this action against his former employer, Defendant Oakley Transport, Inc. ("Oakley Transport"). (Dkt. 1) In a second amended complaint, Plaintiff joined Defendant Oakley Transportation Group, Inc. ("Oakley Group") as a defendant. (Dkt. 16) Plaintiff alleged Oakley Transport is a subsidiary of Oakley Group. (Id. at ¶ 8) In his sixth amended complaint (the "Complaint"), Plaintiff alleges Defendants committed fraudulent misrepresentation (Count I), fraudulent inducement (Count II), fraudulent concealment (Count III), and fraudulent filing of information returns in violation of 26 U.S.C. § 7434(a) (Count IV). (Dkt. 113) Plaintiff also seeks to recover for Defendants' alleged unjust enrichment (Count V). (Id.) Additionally, Plaintiff alleges Oakley Transport willfully violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") (Counts VI, VII, VIII, and XIII), the Florida Civil Rights Act, §§ 760.01–760.11 and 509.092, Fla. Stat. (the "FCRA") (Counts IX, XI. And XIV), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA") (Count X), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (the "FMLA") (Counts XII and XV), and the Florida Workers' Compensation statute, § 440.01 *et seq.*, Fla. Stat. (the "FWCA") (Count XVI). (Id.) Plaintiff alleges Oakley Transport willfully terminated Plaintiff's employment because of his disability and age, and in retaliation for his engaging in protected activities. (Id.)

2

Plaintiff moves for a judgment on the pleadings as to Counts I and II. (Dkt. 137) Plaintiff also moves for summary judgment against Defendants as to all Counts except Counts X and XI, his age discrimination claims. (Dkt. 165) Defendants move for summary judgment on all of Plaintiff's claims. (Dkt. 146)

### B.    Undisputed Material Facts

#### 1.    Plaintiff's Employment & Pay

Defendant Oakley Transport is a trucking company that hired Plaintiff as a truck driver in January 2018. (Dkt. 113 at 178; Dkt. 118 at 179) In connection with Plaintiff's hire, on January 22, 2018, Plaintiff executed the Driver Pay and Credential Agreement (the "Pay Agreement"). (Dkt. 146-1 at 15; Dkt. 165-1 at 9) The Pay Agreement provides: "As you agreed to during your hiring process here at Oakley Transport, your Pay Rate effective at the completion of orientation and training will be . . . : Flat Rate: [$]250.00 a day which includes $54 per day for per diem for all rates from $200-$350 per day." (Id.) Plaintiff signed the Pay Agreement. (Id.) Later, Plaintiff signed a second Pay Agreement dated June 12, 2019, which increased the per diem pay to $66 per day for all rates from $200 to $350 per shift. (Dkt. 146-1 at 16)

During Plaintiff's employment, Plaintiff received Drivers Payroll Recap Statements (the "Payroll Statements"). (Dkt. 165-1 at ¶ 13) The Payroll Statements specified Plaintiff's gross pay during the pay period, his pay rate, deductions, and the amount of per diem compensation. (Id. at 27–89) Plaintiff's W-2 form for 2018 lists the amount he was paid for per diem allowances. (Dkt. 146-1 at 13)

### 2.    Plaintiff's Work-Related Injury, Workers' Compensation Claim & Termination

On September 1, 2018, Plaintiff suffered a work-related injury to his left knee at Oakley Transport's terminal in Conley, Georgia. (Dkt. 165-1 at ¶ 17; Dkt. 146-1 at ¶ 20) After the injury, Plaintiff continued to work for Oakley Transport. (Dkt. 165-1 at ¶ 17; Dkt. 146-1 at ¶ 21)

On September 11, 2018, Plaintiff underwent an MRI of his knee. (Dkt. 165-1 at ¶ 17; Dkt. 146-1 at ¶ 22) One week later, on September 18, 2018, Plaintiff's physician instructed him not to return to work. (Id.; Dkt. 142-1 at 3–6) Plaintiff's physician indicated she believed Plaintiff's injury—a torn meniscus—would require arthroscopic surgical correction and subsequent physical therapy. (Id. at 5–6) The physician noted that the surgical recovery would require Plaintiff to use crutches for three to four days, and that it would take three to four weeks after the surgery for Plaintiff to regain full strength to drive a tanker. (Id. at 6) The physician stated in her report, "We will go forward with seeking approval from workers' compensation . . . ." (Id.) Although Defendant Oakley Transport, via its adjuster, paid the bill for Plaintiff's September 18, 2018 examination and treatment, Defendant Oakley Transport and/or its adjuster refused to authorize Plaintiff's knee surgery. (Dkt. 113 at ¶¶ 204–05; Dkt. 118 at ¶¶ 204–05)

Plaintiff's physician signed a form stating Plaintiff could "return to regular duty (truck driving)" beginning October 1, 2018, (Dkt. 142-1 at 7), and Plaintiff returned to work at Oakley Transport. (Dkt. 165-1 at ¶¶ 18–19) Oakley Transport provided

Plaintiff a truck with automatic transmission, rather than one with manual
transmission. (Dkt. 113 at ¶ 213; Dkt. 118 at ¶ 213) Plaintiff earned safety bonuses for
each of the following months: February 2019, March 2019, April 2019, June 2019, and
July 2019. (Dkt. 165-1 at ¶ 19; Dkt. 118 at ¶ 218)

Nearly a year after Plaintiff injured his knee, on July 22, 2019, Plaintiff's
physician placed Plaintiff on light duty work with a specific restriction of "no
loading/unloading." (Dkt. 142-1 at 8) In the time between his injury and this new light
duty work restriction, the record indicates Plaintiff did not undergo any surgery.[1]

Kami Everitt, Oakley Transport's HR Director, attested that Oakley Transport
employees who are unable to perform the essential functions of their jobs due to a
work-related injury are provided offers of temporary alternative modified work. (Dkt.
146-1 at ¶ 32) On August 7, 2019, Oakley Transport sent Plaintiff an offer of alternative
modified work to assist him in "transition[ing] back to [regular duty] work." (Id. at
127) The letter advised Plaintiff of an opportunity to work as a facility assistant for
Arms Wide Open Community Development Corporation, a local nonprofit agency.
(Id.) Plaintiff's assigned duties for Arms Wide Open would not violate his physician's
restrictions of "no loading/unloading." (Id.) The letter indicated Plaintiff's temporary
work opportunity with Arms Wide Open was to begin on August 13, 2019. (Id.)

On August 13, 2019, Plaintiff advised his physician he could not drive due to
great pain in his knee. (Dkt. 142-1 at 9) The physician instructed Plaintiff not to return

---

[1] Plaintiff underwent ten months of physical therapy to treat his knee. (Dkt. 165-1 at ¶ 21) The record
does not establish when this ten-month period of treatment took place.

to work and signed a workers' compensation form stating Plaintiff "may not return to work at this time." (Id. at 9–10) Oakley Transport and/or its claims adjuster paid workers' compensation disability benefits to Plaintiff in August 2019. (Dkt. 113 at ¶ 227; Dkt. 118 at ¶ 229)

On August 19, 2019, Plaintiff, through an attorney named Lloyd Basso, filed a petition for workers' compensation benefits with the state of Florida's Office of the Judges of Compensation Claims. (Dkt. 165-1 at 128–131) In the petition, Plaintiff requested medical benefits as well as attorneys' fees and costs under §§ 440.13 and 440.34, Florida Statutes. (Id.)

On September 23, 2019, Oakley Transport sent Plaintiff a second offer of alternative modified work. (Dkt. 165-1 at 132) The letter advised Plaintiff of an opportunity to work as a facility assistant for First Come Must Serve Thrift, a local nonprofit agency ("Must Serve"). (Id. at 132–33) Plaintiff's assigned duties for Must Serve would not violate his physician's restrictions of "no loading/unloading." (Id. at 133) The letter indicated Plaintiff's temporary work opportunity with Must Serve was to begin on September 30, 2019. (Id. at 132)

On October 8, 2019, Plaintiff's physician authorized Plaintiff to return to work on a light duty restriction. (Dkt. 142-1 at 13) For reasons that are unclear from the record, but perhaps related to Plaintiff's only having been cleared for light duty work, Oakley Transport sent Plaintiff a third offer to perform alternative modified work for Must Serve on October 10, 2019. (Dkt. 165-1 at 137) This letter indicated the opportunity began on October 21, 2019. (Id. at 132) Counsel for Oakley Transport

6

forwarded this letter to Mr. Basso, Plaintiff's counsel representing him in his workers' compensation action. (Id. at 141)

On October 23, 2019, counsel for Oakley Transport sent a letter regarding Plaintiff's compensation claim action to Mr. Basso which stated, "This letter will confirm we settled this case for a total of $40,000.00 inclusive with any and all benefits ending as of October 23, 2019. This settles any and all claims with Oakley Transport and includes a general release and voluntary resignation." (Dkt. 146-1 at 139) Mr. Basso responded, "We do have a deal, I just confirmed it with my client." (Id. at 140) Mr. Basso also filed a Notice of Settlement with the Office of the Judges of Compensation Claims as to Plaintiff's case on October 23, 2019. (Id. at 141)

Oakley Transport terminated Plaintiff on October 23, 2019. (Id. at ¶ 40; Dkt. 165-1 at ¶ 25) Plaintiff did not perform work for or receive a regular paycheck from Oakley Transport after October 23, 2019. (Dkt. 146-1 at ¶ 41) Plaintiff's Employee Job Profile reflects this termination and the reason for it as: "WC Settlement". (Dkt. 165-8) However, Oakley Transport never paid Plaintiff the $40,000.00. (Dkt. 162-2 at 26:17-19)

On March 4, 2020, Defendants' counsel filed a motion to withdraw a pending motion to enforce the settlement in Plaintiff's workers' compensation action. (Dkt. 165-1 at 142) Therein, Defendants' counsel represented, "The parties agree that there was no meeting of the minds, and therefore there was no enforceable settlement agreement." (Id. at 143) In a declaration, Plaintiff asserts that on October 24, 2019, Oakley Transport "attempted to expand the [settlement] agreement by sending [him]

disagreeable documents that [he] rejected." (Dkt. 165-1 at ¶ 26) Specifically, Plaintiff refused to execute the "Voluntary Resignation from Employment" document. (Dkt. 113 at ¶ 248; Dkt. 118 at ¶ 248)

Plaintiff asserts, and Defendants do not dispute with record evidence, that Plaintiff was never informed of his termination. Plaintiff maintains he did not receive notice of his termination until May 5, 2020, when he received Oakley Transport's responses to Plaintiff's requests for admissions in a separate action. (Dkt. 165-1 at ¶ 31; Dkt. 165-5 at 48)

Meanwhile, Plaintiff received a letter from Oakley Group's workers' compensation claims administrator dated March 11, 2020. (Dkt. 165-7 at 1) Therein, the claims administrator expressed that Plaintiff was eligible to receive "Temporary Partial Disability" benefits. (Id.) In the letter, the claims administrator explained that to receive the benefits, Plaintiff would have to complete attached forms, titled "Employee Earnings Reports." (Id.) Attached to the letter were seven "Employee Earnings Report" forms, one for each month between October 2019 through April 2020, signed by the claims administrator as the "requesting party." (Id. at 295–301)

### 3.    Plaintiff's Job Duties

Oakley Transport employed Plaintiff as a Bulk Tank Professional.[2] (Dkt. 162-2 at 12:4-12) Ms. Everitt testified that Plaintiff's position as a Bulk Tank Professional

---

[2] In their reply, Defendants represent they "mistakenly asserted that Plaintiff was employed as a Pneumatic Tank Professional" in their Motion for Summary Judgment. (Dkt. 166 at 6) Defendants admit Plaintiff was employed as a Bulk Tank Professional. (Id.) Thus, the Court treats Plaintiff's position as a Bulk Tank Professional as undisputed.

required him to drive tankers that carried liquid material. (Id.) His position did not require him to use a forklift to unload a trailer or to lift boxes to unload a trailer. (Id. at 12:12-18) Instead, to unload the product from Plaintiff's tanker, Plaintiff would attach a hose to the tanker that would deliver the product from the tanker to the customer using a hydraulic pump. (Id. at 13:4-20) When asked whether Plaintiff performed the essential functions of his position when he returned to work in October 2018 through July 2019, Ms. Everitt stated, "As far as I know, yes, he did." (Id. at 18:8-12) During this period, Plaintiff was not under a light duty restriction from his physician. (Dkt. 142-1 at 7)

### 4.    The Location of Plaintiff's Employment

During the entirety of Plaintiff's employment with Oakley Transport, Plaintiff was based out of Oakley Transport's facility in Conley, Georgia. (Dkt. 146-1 at 44) Plaintiff's direct supervisor was Doug Marciante, the Terminal Manager of Oakley Transport's facility in Conley, Georgia, and who worked out of that facility. (Id. at ¶ 17) Drivers for Oakley Transport are assigned Driver Managers, who are responsible for dispatching drivers and logistics. (Id. at ¶ 18) Plaintiff's Driver Manager worked out of Oakley Transport's facility in Conley, Georgia. (Id.) At the time of Plaintiff's hire and throughout his employment, he resided in Snellville, Georgia and he had a Georgia driver's license. (Id. at ¶¶ 8–10) Plaintiff's W-2 forms for 2018 and 2019 reflect withholdings of state income tax for the State of Georgia. (Id. at 13–14)

Oakley Transport, however, is headquartered in Polk County, Florida. (Dkt. 162-2 at 33:17-19) Decisions regarding Oakley Transport's company policies and

9

practices occur and are implemented from its Florida headquarters. (Dkt. 113 at ¶ 35; Dkt. 118 at ¶ 35) Oakley Transport's decision to terminate Mr. Hardin's employment was made in the State of Florida. (Dkt. 113 at ¶ 46; Dkt. 118 at ¶ 46)

At all times during Plaintiff's employment and during the 2018 and 2019 calendar years, Oakley Transport employed less than 50 employees within a 75-mile radius of its facility in Conley, Georgia. (Dkt. 146-1 at ¶ 19) At all times during Plaintiff's employment, Oakley Transport regularly employed at least 50 employees at or within 75 miles of its Florida headquarters. (Dkt. 113 at ¶ 168; Dkt. 118 at ¶ 168)

### 5.    Plaintiff's Charges of Discrimination

On July 20, 2020, Plaintiff filed a Charge with the EEOC under the ADEA and ADA. (Dkt. 146-1 at 142) In Plaintiff's Charge, which he signed under penalty of perjury, Plaintiff acknowledged he "was terminated on or about 10/23/2019 from [his] employment." (Id.) Plaintiff filed the charge about two-and-a-half months after he learned Defendants had terminated his employment in May 2020. (Dkt. 165-1 at ¶ 31) On September 29, 2021, the EEOC's Tampa Field Office issued a Dismissal and Notice of Rights letter to Plaintiff, finding that Plaintiff's Charge was untimely. (Id. at 144)

## II.    STANDARD OF REVIEW

### A.    Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. Fed R. Civ. P. 12(c). Rule 12(h)(2) permits the defense of failure to state a claim upon which relief can be granted

to be raised in a motion for judgment on the pleadings under Rule 12(c). Fed. R. Civ. P. 12(h)(2). A motion under Rule 12(c) is "governed by the same standards as a motion to dismiss under Rule 12(b)(6)." United States v. Bahr, 275 F.R.D. 339, 340 (M.D. Ala. 2011). Thus, when evaluating a motion under Rule 12(c), the Court "accept[s] the facts in the Complaint as true and view[s] them in the light most favorable to the nonmoving party." Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir. 1996).

"Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." Id. (citing White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir. 1999)).

### B.    Summary Judgment

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no

genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

### A. Plaintiff's Motion for Judgment on the Pleadings.

The Court will not consider Plaintiff's Motion for Judgment on the Pleadings.

"Under Federal Rule of Civil Procedure 12(c), a court has the discretion to convert a motion for judgment on the pleadings into a motion for summary judgment and proceed under Rule 56, so long as the nonmoving party is given notice and an opportunity to respond." Hagerman v. Cobb Cnty., No. 06-CV-02246, 2008 U.S. Dist. LEXIS 24972 at *7 (N.D. Ga. Mar. 28, 2008) (quoting Fed. R. Civ. P. 12(c)). However, here there is no need to convert the motion to one for summary judgment because Plaintiff also filed a motion for summary judgment on the same counts for which he seeks judgment on the pleadings. Id.

The Court will only consider the motions for summary judgment, which were filed "following the conclusion of the discovery period." Id. Although "judgment may [have been] rendered" on Counts I and II "by considering the substance of the pleadings and any judicially noticed facts," the Court does not address Plaintiff's motion for judgment on the pleadings. Horsley, 292 F.3d at 700 (citations omitted). Instead, the Court "looks to the undisputed facts in the record to determine whether summary judgment is warranted" for either Plaintiff or for Defendants. See Hagerman, 2008 U.S. Dist. LEXIS 24972 at *7.

### B.    The Motions for Summary Judgment.

Defendants move for summary judgment on each count of the Complaint, and Plaintiff moves for summary judgment on all claims except for those under the ADEA. First, Defendants argue the undisputed facts show Defendants did not engage in fraud. Second, Defendants argue Plaintiff's claims under the ADA and the ADEA are barred because Plaintiff failed to exhaust administrative remedies. Moreover, Defendants

13

argue no question of material fact exists as to whether Defendants unlawfully
discriminated or retaliated against Plaintiff. Defendants also argue Plaintiff's claims of
discrimination under the FCRA fail because Plaintiff is not a Florida resident and the
alleged discrimination occurred in Georgia. Third, Defendants argue they were not
bound by the FMLA because the FMLA excludes from its coverage employees whose
employer employs fewer than 50 employees within 75 miles of the employee's "work
site." Defendants assert the record establishes Oakley Transport employed fewer than
50 employees within the 75-mile radius of Plaintiff's worksite, the Oakley Transport
facility in Conley, Georgia. Finally, Defendants argue they are entitled to summary
judgment on Plaintiff's retaliation claim under the FWCA because Defendants
terminated Plaintiff due to his attorney's representation that he agreed to resign as a
part of Defendants' settlement with Plaintiff in 2019. For this reason, Defendants
argue the record establishes Defendants did not terminate Plaintiff in retaliation for his
filing a workers' compensation claim.

Plaintiff moves for summary judgment on all claims except his age
discrimination claims. First, he asserts the record evidence establishes he is entitled to
summary judgment on his claims of fraud and unjust enrichment. As for Plaintiff's
claims under the ADA and the FCRA, Plaintiff argues he is entitled to summary
judgment because undisputed facts establish Defendants failed to accommodate
Plaintiff's "walking physical impairment." (Dkt. 165 at 25) Next, Plaintiff asserts he is
entitled to summary judgment on his claim under the FMLA because the record shows
Defendants failed to provide Plaintiff with medical leave to undergo knee surgery. In

14

response to Defendants' assertion that the FMLA did not cover employees at Plaintiff's worksite, Plaintiff notes that Defendants admitted: "At all relevant times hereto, Defendant Oakley Transport regularly employed at least 50 employees at or within 75 miles of its Florida headquarters." (Dkt. 113 at ¶ 168; Dkt. 118 at ¶ 168) Finally, Plaintiff argues he is entitled to summary judgment on his claims of retaliation under the ADA, FCRA, FMLA, and WCA because Oakley Transport denied Plaintiff's requests for accommodation, required he work at Must Serve, and when Must Serve turned him away, Oakley Transport covertly terminated Plaintiff's employment. Plaintiff argues these facts establish a causal connection between Plaintiff's protected conduct and his termination. (Id.)

1.    **Plaintiff's Fraud & Unjust Enrichment Claims (Counts I, II, III, IV, and V)**

Defendants are entitled to summary judgment on Plaintiff's fraud and unjust enrichment claims. These claims are based on Plaintiff's unsupported assertions that Defendants made misrepresentations in online advertisements and during pre-employment orientation that tanker drivers would be paid a $54 per diem allowance in addition to $250.00 per day in regular compensation. (Dkt. 165-1 at ¶¶ 4–7) Defendants note that the Pay Agreement Plaintiff signed states he would be paid $250.00 per day, "which *includes* $54 per day for per diem." (Id. at 9) (emphasis added)

The undisputed facts do not establish essential elements of Plaintiff's fraudulent misrepresentation and fraudulent inducement claims. Under Florida law, the elements of fraudulent misrepresentation are: "'(1) a false statement concerning a material fact;

15

(2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" <u>Butler v. Yusem</u>, 44 So. 3d 102, 105 (Fla. 2010) (quoting <u>Johnson v. Davis</u>, 480 So. 2d 625, 627 (Fla. 1985)). The elements of fraudulent inducement are the same as the elements for fraudulent misrepresentation, except that the plaintiff must also show that his or her reliance was justifiable. <u>Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.</u>, 162 F.3d 1290, 1315 (11th Cir. 1998) (citing <u>Saunders Leasing Sys., Inc. v. Gulf Cent. Distrib. Ctr., Inc.</u>, 513 So. 2d 1303, 1306 (Fla. 2d DCA 1987)).

Plaintiff attests that an unidentified person told him he would receive a $54 per diem allowance in addition to a daily flat rate of $250. Assuming this fact to be true and that the unidentified person had the authority to bind Defendants, Plaintiff provides no direct or circumstantial evidence to establish the person knew the representation was false or that the person intended to induce Plaintiff's reliance on the representation. Thus, Plaintiff's claims of fraudulent misrepresentation and inducement fail. Plaintiff's fraudulent inducement claim fails for the additional reason that Plaintiff fails to establish that his reliance on the asserted misrepresentation was justified. Plaintiff signed the Pay Agreement, the plain terms of which disclose that Plaintiff would be paid $250 per day, and that this amount included a $54 per diem.

As for fraudulent concealment, the elements are:

> (i) the defendant concealed or failed to disclose a material fact; (ii) the defendant knew or should have known the material fact should be disclosed; (iii) the defendant knew

its concealment of or failure to disclose the material fact would induce the plaintiff to act; (iv) the defendant had a duty to disclose; and (v) the plaintiff detrimentally relied on the concealed information.

Philip Morris USA Inc. v. Principe, 337 So. 3d 821, 827 n.7 (Fla. 3d DCA 2021). Defendants did not conceal or fail to disclose a material fact. The plain terms of the Pay Agreement disclose that Plaintiff would be paid $250 per day, and that this amount included a $54 per diem. Plaintiff's claim for fraudulent concealment fails.

Next, Defendants are entitled to summary judgment on Plaintiff's claim that Defendants filed fraudulent information returns in violation of 26 U.S.C. § 7434(a). "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). To establish a claim of tax fraud under § 7434, a plaintiff must prove the defendant issued an information return; the information return was fraudulent; and the defendant willfully issued a fraudulent information return. Leon v. Tapas & Tintos, Inc., 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014) (citations omitted). "[T]he purpose of the statute is to redress individual wrongs." Chen v. Wow Restaurant Th, LLC, No. 23-cv-1602, 2024 WL 4679029, at *2 (M.D. Fla. Nov. 5, 2024). "The statute specifically provides that a 'person may bring a civil action for damages' and then discusses the extent to which the 'defendant shall be liable to the plaintiff.' Accordingly, the statutory purpose is to provide a private cause of action for individuals wronged by others . . . ." Id. (citing 26 U.S.C. § 7434(a)).

17

Plaintiff points to the Payroll Statements, in which the per diems are located "above Total Gross Pay." (Dkt. 165 at 23) Plaintiff asserts the Payroll Statements "disguised deductions . . . that were used to embezzle/steal monies out of Plaintiff's accrued pay." (Id.) Defendants present a report from an expert, William Blend, CPA, who opines that Plaintiff was paid in accordance with the Pay Agreements. (Dkt. 146-1 at 23) Mr. Blend submits a schedule of Plaintiff's compensation that "demonstrates that for each pay date listed . . . the net pay included either the full shift or half shift rate in taxable income or when applicable identified the per diem as non-taxable, and that non-taxable amount was included in the net payment to" Plaintiff. (Id.)

The record evidence does not establish that Defendants issued fraudulent information returns. The Payroll Statements show Oakley Transport deducted the applicable per diem amount from Plaintiff's gross pay for a given pay period so that the per diem amount would not be taxed. After calculating and deducting taxes from Plaintiff's taxable income, Oakley Transport would add the full, non-taxed per diem amount back into Plaintiff's net pay. (See Dkt. 146-1 at 56–75) Plaintiff does not submit evidence to prove that Defendants were not permitted to characterize Plaintiff's per diem allowances as non-taxable.

Accordingly, Plaintiff does not establish he has a claim under § 7434. See Chen, 2024 WL 4679029, at *2 ("[T]he statutory purpose is to provide a private cause of action for individuals wronged by others . . . .").

Finally, Defendants are entitled to summary judgment on Plaintiff's claim for unjust enrichment. Defendants make several arguments in support of their motion.

18

First, they argue Oakley Transport and Plaintiff were parties to a contract, and where a claim for breach of contract exists, a claim of unjust enrichment fails. (Dkt. 146 at 16) Next, Defendants argue a plaintiff cannot sustain a claim for unjust enrichment where the defendant has paid for the benefit conferred. (Id.) Third, Defendants argue Plaintiff cannot establish the value of the benefit conferred on Defendants. (Id. at 17) Plaintiff responds that the Eleventh Circuit has held that a claim for unjust enrichment does not necessarily fail merely because another adequate legal remedy exists. (Dkt. 162 at 22–23; Dkt. 165 at 24)

In Florida, the elements of a claim for unjust enrichment are: "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." Hercules, Inc. v. Pages, 814 F. Supp. 79, 80 (M.D. Fla. 1993) (citing Henry M. Butler, Inc. v. Trizec Props., Inc., 524 So. 2d 710, 712 (Fla. 2d DCA 1988)). "When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." Am. Safety Ins. Serv., Inc. v. Griggs, 959 So. 2d 322, 331-32 (Fla. 5th DCA 2007) (citations omitted); Gene B. Glick Co., Inc. v. Sunshine Ready Concrete Co., Inc., 651 So. 2d 190, 190 (Fla. 4th DCA 1995) ("Unjust enrichment . . . cannot exist where payment has been made for the benefit conferred.").

Here, Plaintiff fails to prove with record evidence that Defendants did not pay him according to the terms of the Pay Agreement. Moreover, he fails to establish that

19

the Pay Agreement did not provide him with "adequate consideration" for his work as a Bulk Tank Professional for Oakley Transport. For these reasons, Plaintiff's claim of unjust enrichment fails.

Defendants' motion for summary judgment is due to be **GRANTED** as to Counts I, II, III, IV, and V. Plaintiff's motion is **DENIED**.

### 2. Plaintiff's Claims of Discrimination under the ADA and ADEA (Counts VI, VII, VIII, and X)

Defendants move for summary judgment on Plaintiff's claims under the ADA and the ADEA because Defendants assert Plaintiff failed to exhaust administrative remedies and fails to establish *prima facie* cases of discrimination. Plaintiff moves for summary judgment in his favor on his ADA claims because he argues the record establishes he suffered discrimination under the ADA.

#### a)    *Failure to Exhaust Administrative Remedies*

First, Defendants argue the Court should grant Oakley Transport summary judgment on Plaintiff's claims under the ADA and the ADEA because Plaintiff failed to exhaust administrative remedies. (Dkt. 146 at 17–23) Defendants argue Plaintiff failed to file an EEOC charge for his ADA and ADEA claims within 180 days of his termination, the deadline for filing a charge in non-deferral states like Georgia. Instead, he filed his charge with the EEOC 271 days after his termination on October 23, 2019. Thus, Defendants argue Plaintiff's charge was untimely and his ADA and ADEA claims are barred by the statute of limitations. Defendants acknowledge that "the Court need not defer to the EEOC's findings" as to the timeliness of Plaintiff's

charge. (Id. at 19) See Young v. FedEx Exp., 432 F. App'x 915, 917 (11th Cir. 2011) (citing Moore v. Devine, 767 F.2d 1541, 1550-51 (11th Cir. 1985), *modified on reh'g*, 780 F.2d 1559, 1560 (11th Cir. 1986)). [3]

In response, Plaintiff argues his claim is not barred for failure to timely file a claim with the EEOC because Oakley Transport "covertly" terminated Plaintiff's employment. (Id. at 17) Plaintiff asserts that Oakley Transport did not disclose that it had fired Plaintiff; thus, Plaintiff contends the time for him to file a claim had not begun to run. (Id. at 17, 19) Plaintiff also appears to contend that the Court should apply the statute of limitations applicable in Florida, a deferral state because Oakley Transport's HR decisions were made in Florida. (Id. at 23–24) In Florida, an EEOC charge is timely if filed within 300 days of the alleged violation.

A plaintiff raising claims under the ADA or the ADEA must timely file a charge of discrimination with the EEOC before pursuing the claims in district court. Abram v. Fulton Cnty., 598 F. App'x 672, 674 (11th Cir. 2015) (citing 42 U.S.C. § 12117(a)); Grayson v. K Mart Corp., 79 F.3d 1086, 1101 (11th Cir. 1996) (citing 29 U.S.C. § 626(d)). For an EEOC charge to be timely in a non-deferral state, like Georgia, the charge must be filed within 180 days of the occurrence of the alleged violation. Abram, 598 F. App'x at 674 (citations omitted). In a deferral state, like Florida, the charge must be filed within 300 days of the occurrence of the alleged violation. Grayson, 79

---

[3] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it may be considered as persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

F.3d at 1101 (citations omitted). "Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge." Rizo v. Ala. Dep't of Human Res., 228 F. App'x 832, 835 (11th Cir. 2007) (citing Alexander v. Fulton Cnty., 207 F.3d 1303, 1332 (11th Cir. 2000)).

To determine the statute of limitations for filing an EEOC charge for alleged discriminatory acts under the ADA or the ADEA, a court looks to the law of the state in which the alleged discriminatory acts occurred. See Taye v. Vectrus Sys. Corp., No. 22-CV-200, 2023 WL 4492463, at *2 (M.D. Ga. Jul. 12, 2023) (citing Bush v. Liberty Nat'l Life Ins., 12 F. Supp. 2d 1251, 1255 n.1 (M.D. Ala. 1998), aff'd, 196 F.3d 1261 (11th Cir. 1999)) (noting the court "has not located any binding Circuit precedent on this issue" but reasoning the "applicable statute of limitations depends upon a connection between the unlawful employment practice, the employee, and the state supplying the statute of limitations"). "The location where an employment decision takes place should not be a decisive factor to determine the law applicable to claims affected by the decision." Arnold v. United Parcel Serv., Inc., No. 11–CV–00118, 2012 WL 1035441, at *2 (M.D. Ga. Mar. 27, 2012) ("If the Court allows employers to dictate the location that governs the time limitation, employers would be able to manipulate the system by making all employment decisions in non-deferral states.").

Here, the non-deferral statute of limitations applies because the connection between Georgia, on the one hand, and the alleged unlawful employment decision and Plaintiff, on the other, is stronger. Plaintiff suffered his workplace injury while based out of the Oakley Transport facility in Conley, Georgia. (Dkt. 146-1 at 44) When

Plaintiff was terminated, his employment was still based out of Georgia. (Id.) Likewise, at the time of his termination, Plaintiff resided in Snellville, Georgia, and had a Georgia driver's license. (Id. at ¶¶ 8–9) Even though Defendant Oakley Transport's decision to terminate Mr. Hardin's employment was made in Florida, (Dkt. 113 at ¶ 46; Dkt. 118 at ¶ 46), this fact is not determinative. Arnold, 2012 WL 1035441, at *2. Plaintiff suffered the alleged violation in Georgia, a non-deferral state. For this reason, Plaintiff's EEOC charge, which was filed more than 180 days after the alleged violation, was facially untimely.

Plaintiff asserts, however, that he did not receive unequivocal notice of his termination until May 2020. "[T]he time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the adverse employment decision." Grayson, 79 F.3d at 1100 n.19. "A 'final decision' that remains uncommunicated to the terminated employee has no impact on the statutory filing deadline." Wright v. AmSouth Bancorp., 320 F.3d 1198, 1201 (11th Cir. 2003). "When an employee is left simply to infer and deduce his employment status from the surrounding events, no *unequivocal* communication of an adverse employment decision has occurred." Id. at 1203 (emphasis in original).

Plaintiff asserts, and Defendants do not dispute with record evidence, that Oakley Transport did not notify him of his termination until May 2020. (Dkt. 165-1 at ¶ 31) Even though Plaintiff did not perform work for or receive a regular paycheck from Oakley Transport after October 23, 2019, (Dkt. 146-1 at ¶ 41), Plaintiff received a letter from Oakley Group's workers' compensation claims administrator dated

23

March 11, 2020. (Dkt. 165-7 at 1) The letter does not clearly indicate that Plaintiff was

no longer employed by Oakley Transport. (See id.) Plaintiff asserts he did not receive

unequivocal notice of his termination until May 5, 2020, when he received Oakley

Transport's responses to Plaintiff's requests for admissions in a separate action. (Dkt.

165-1 at ¶ 31; Dkt. 165-5 at 48) Plaintiff then filed his charge on July 20, 2020. (Dkt.

146-1 at 142)

Accepting Plaintiff's assertion as true, as the Court must as this stage, a genuine

issue of material fact exists as to whether Plaintiff filed his charge of discrimination

within 180 days of receiving unequivocal notice of his termination. Accordingly, the

Court cannot grant Defendants summary judgment on the basis that Plaintiff failed to

exhaust administrative remedies.

The Court next considers whether Plaintiff has established *prima facie* cases of

discrimination under the ADA and the ADEA.

### b)    *The ADA*

Defendants argue Plaintiff could not perform the essential functions of his

position as bulk tank truck driver. Plaintiff asserts he could perform the essential

functions of his position while on a "light duty" restriction from his physician. (Dkt.

162 at 25) He argues that when Oakley Transport required him to work at "Must

Serve," performing non-driving duties for less pay, Oakley Transport treated him less

favorably than similarly situated employees.

The ADA prohibits an employer from discriminating "against a qualified

individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). "To establish a prima

facie case of disability discrimination, a plaintiff must show that he (1) is disabled, (2) is a 'qualified' individual, and (3) was subjected to unlawful discrimination because of his disability." Samson v. Fed. Exp. Co., 746 F.3d 1196, 1200 (11th Cir. 2014) (citations omitted). Here, the Parties appear to not dispute that Plaintiff was disabled at the time of his termination. The Parties do dispute whether Plaintiff was a "qualified individual" under the ADA.

"[A] 'qualified individual' is someone 'who, with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires.'" Id. (emphasis added in original) (quoting 42 U.S.C. § 12111(8)). Whether a plaintiff can perform the essential functions of a position is a fact-intensive inquiry. Cf. id. at 1200–01. A court should consider the employer's description of a job and "'"how the job is actually performed in practice."'" Id. at 1201 (quoting McMillan v. City of New York, 711 F.3d 120, 126 (2d Cir. 2013) (citation omitted)).

Plaintiff presents evidence that Bulk Tank Professionals drive tankers carrying liquid material. (Dkt. 162-3 at 12:4-12) Bulk Tank Professionals use a hydraulic pump to unload the material from the tank and deliver it to the customer. (Id. at 6:5-12) Evidence in the record suggests a Bulk Tank Professional should stand by the truck as the material is unloaded to monitor the risk of leaks or spills. (Id. at 8:6-14; 9:4-6) However, a Bulk Tank Professional is not required to lift boxes to unload a trailer. (Dkt. 162-2 at 12:12-18)

25

To rebut Plaintiff's assertion that his disability did not preclude him from performing the essential functions of his job, Defendants provide a record of the Bulk Tank Professional job description. The description includes as the position's essential functions: "driving, sliding tandems, hook/unhook," "[l]oad[ing] or unload[ing] trailers with interstate and intrastate loads of freight," and "perform[ing] pump off operations." (Dkt. 166-1 at 6) But Defendants provide no evidence that these essential functions could not be performed by a Bulk Tank Professional while on a "light duty" restriction. Although Plaintiff's physician prohibited "loading/unloading," the record evidence does not establish the physician knew that in Plaintiff's position, loading and unloading is conducted via hydraulic pump.

The Court finds a question of fact exists as to whether Plaintiff could perform the essential functions of the Bulk Tank Professional position. Thus, a jury must decide whether Plaintiff was a "qualified individual" and therefore has establishes a *prima facie* case of discrimination under the ADA. The parties' motions are due to be **DENIED** as to Counts VI, VII, and VIII.

### c)    *The ADEA*

Defendants argue Plaintiff fails to establish a *prima facie* case of age discrimination because the record establishes Plaintiff was not qualified for his position. (Dkt. 146 at 27–28) Defendants also note that Plaintiff has not identified a similarly situated individual outside his class who was treated more favorably. (Id. at 29) In response, Plaintiff asserts he was qualified. (Dkt. 162 at 25) Additionally,

26

Plaintiff points to evidence in the record that suggests generally that Oakley Transport hired truck drivers under the age of 40 in the years 2020, 2021, 2022, and 2023. (Id.; Dkt. 162-2 at 16:1-4) It is not clear from the deposition that Oakley Transport only hired persons under the age of 40 in that timeframe.

To establish a *prima facie* case of discrimination using circumstantial evidence, a plaintiff must show: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class." Sheppard v. Sears, Roebuck & Co., 391 F. Supp. 2d 1168, 1177 (S.D. Fla. 2005) (citing Maynard v. Bd. of Regents of the Division of Univs. of the Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003)). A plaintiff must identify "'an individual who replaced him or was treated better than he who was not a member of his protected class.'" Id. at 1178 (quoting Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1082 (11th Cir. 2005)).

Plaintiff does not identify an individual who replaced him who was not a member of his protected class. By failing to identify any specific individuals, Plaintiff fails to present evidence that he was replaced by a younger truck driver who was similarly situated to him. See id. at 1179. Thus, he fails to establish a *prima facie* case of discrimination under the ADEA. Defendants' motion for summary judgment is due to be **GRANTED** as to Count X.

### 3.    Plaintiff's Claims of Discrimination Under the FCRA (Counts IX, XI, and XIV)

Defendants argue they are entitled to summary judgment on Plaintiff's claims under the FCRA because Plaintiff was not a Florida resident at any time material to this action and the record establishes that the alleged discrimination did not occur in Florida. This Court agrees. A plaintiff who does not reside in Florida and has never resided in Florida and who does not allege wrongful acts occurring in Florida cannot maintain a claim under the FCRA. MacMartin v. Marine Mgmt. Servs., Inc., No. 22-cv-610, 2023 WL 9469635, at *4–5 (M.D. Fla. Feb. 7, 2023) report and recommendation adopted as modified, 2023 WL 9469397 (M.D. Fla. Mar. 21, 2023) (dismissing the plaintiff's FCRA claims against her alleged employers that maintained offices and operations in Florida because the plaintiff was not a Florida resident and did not allege she suffered discrimination in Florida); Hampton v. Tem Enters., Inc., No. 19-cv-23575, 2019 U.S. Dist. LEXIS 213572, at *10–12 (S.D. Fla. Dec. 9, 2019).

Here, Plaintiff is not a resident of Florida, and the alleged discriminatory acts did not occur in Florida. When Plaintiff was terminated, his employment was based out of the Oakley Transport facility in Conley, Georgia. (Dkt. 146-1 at 44) Likewise, at the time of his termination, Plaintiff resided in Snellville, Georgia, and had a Georgia driver's license. (Id. at ¶¶ 8–9) Even though Oakley Transport's decision to terminate Mr. Hardin's employment was made in Florida, (Dkt. 113 at ¶ 46; Dkt. 118 at ¶ 46), Plaintiff asserts he suffered discrimination in Georgia, not Florida. For this reason, Plaintiff cannot assert claims under the FCRA.

Accordingly, Defendants' motion for summary judgment is **GRANTED** as to
Counts IX, XI, and XIV.

### 4.    Plaintiff's Claims Under the FMLA (Counts XII and XV)

Defendants are entitled to summary judgment on Plaintiff's FMLA claims
because Plaintiff was not an "eligible employee" under the FMLA. Defendants argue
they are entitled to summary judgment on Plaintiff's FMLA claims because he was
not subject to FMLA protections during his employment. (Dkt. 146 at 33) Plaintiff
asserts that Defendants indicated he would be covered under the FLMA pursuant to
Oakley Transport's Driver Leave of Absence Policy. (Dkt. 162 at 26) Plaintiff also
noted that Oakley Transport regularly employed at least 50 employees at or within 75
miles of its Florida headquarters. (Id. at 27)

The FMLA excludes from its protections an individual whose employer
employs fewer than 50 people within a 75-mile radius of the individual's worksite. 29
U.S.C. § 2611(2)(B)(ii); Morrison v. Magic Carpet Aviation, 383 F.3d 1253, 1254 (11th
Cir. 2004). "For employees with no fixed worksite, e.g., . . . truck drivers . . . , the
worksite is the site to which they are assigned as their home base, from which their
work is assigned, or to which they report." 29 C.F.R. § 825.111(a)(2).

Plaintiff's worksite was Oakley Transport's facility in Conley, Georgia.
Plaintiff's direct supervisor worked out of that facility. (Dkt. 146-1 at ¶ 17) Plaintiff's
Driver Manager, who was responsible for dispatching drivers and logistics, worked
out of the Conley, Georgia facility. (Id. at ¶¶ 17–18) While employed by Oakley
Transport, Plaintiff resided in Snellville, Georgia. (Id. at ¶ 8)

29

At all times during Plaintiff's employment, Oakley Transport employed less than 50 employees within a 75-mile radius of its facility in Conley, Georgia. (Id. at ¶ 19) Thus, Plaintiff was not eligible for FLMA coverage through his employment with Oakley Transport. Even though Oakley Transport regularly employed at least 50 employees at or within 75 miles of its Florida headquarters, (Dkt. 113 at ¶ 168; Dkt. 118 at ¶ 168), Oakley Transport's Florida headquarters were not Plaintiff's worksite.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's FMLA claims. Summary judgment in favor of Defendants is **GRANTED** as to Counts XII and XIV.

### 5. Plaintiff Claims of Retaliation Under the ADA and the FWCA (Counts XIII and XVI)

Defendants argue Plaintiff's claims of retaliation fail because Plaintiff fails to prove Defendants fired him in retaliation for protected activity. (Dkt. 146 at 31–32) Instead, Defendants maintain that the record evidence shows Oakley Transport terminated Plaintiff's employment because it believed Plaintiff agreed to voluntarily resign pursuant to their agreement to settle his workers' compensation action. (Id.) Plaintiff responds and asserts he is entitled to summary judgment on his retaliation claims because he engaged in protected activity each time he or his physician requested Defendant Oakley Transport to authorize his knee surgery and provide reasonable accommodations until he recovered. (Dkt. 162 at 28) He also argues he engaged in protected activity when he filed his workers' compensation claim in August 2019. (Dkt. 165 at 28) He asserts he is entitled to summary judgment because Oakley

Transport never authorized the surgery and ultimately terminated his employment. (Id. at 28–29)

The ADA prohibits discrimination or retaliation against a person on grounds that the person opposed any act or practice made unlawful by the ADA or because he or she made a charge under the ADA. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260 (11th Cir. 2001) (citing 42 U.S.C. § 12203(a)). Likewise, Florida law prohibits an employer from retaliating against an employee "by reason of such employee's valid claim for compensation or attempt to claim compensation under the" FWCA. § 440.205, Fla. Stat. (2024). To establish a *prima facie* case of retaliation under the ADA or the FWCA, a plaintiff must show that: "(1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the adverse action and his protected expression." Lucas, 257 F.3d at 1260; Chavous v. City of Saint Petersburg, 576 F. Supp. 3d 1040, 1063 (M.D. Fla. 2021) (finding the plaintiff "easily establish[ed] the first two elements" where he suffered injuries, applied for and received workers' compensation, and was later terminated). For claims of FWCA retaliation, "a specific retaliatory intent is not required by the express statutory language." Allan v. SWF Gulf Coast, Inc., 535 So. 2d 638, 639 (Fla. 1st DCA 1988).

Defendants only argue that Plaintiff fails to establish the third element, the causal connection between Plaintiff's termination and his protected expression. Defendants maintain Oakley Transport did not retaliate against Plaintiff. Instead, "Oakley Transport discharged Plaintiff due to its good-faith belief that the parties

reached a settlement on October 23, 2019, which specifically included Plaintiff's voluntary resignation, based on representations from Plaintiff's then-attorney," Mr. Basso. (Dkt. 146 at 30–31) It is undisputed, however, that Plaintiff did not sign an agreement to voluntarily resign on October 23, 2019, or anytime thereafter. (Dkt. 113 at ¶ 248; Dkt. 118 at ¶ 248) It is also undisputed that on October 24, 2019, Oakley Transport "attempted to expand the [settlement] agreement by sending" documents that were "disagreeable" to Plaintiff and that he rejected. (Dkt. 165-1 at ¶ 26) The record evidence establishes, then, that Oakley Transport terminated Plaintiff before receiving evidence that Plaintiff executed the settlement agreement, and thus terminated Plaintiff prematurely. Oakley never paid the settlement payment that it claims was consideration for the settlement agreement. When Oakley Transport understood that Plaintiff had not agreed to resign voluntarily under the terms of the proposed settlement, Oakley Transport failed to reverse his termination.

Oakley Transport cannot rely on its belief that Plaintiff voluntarily resigned to destroy the causal connection between Plaintiff's workers' compensation claim and his requests for medical care and his ultimate termination where Oakley Transport knew Plaintiff never executed a settlement agreement or an agreement to voluntarily resign. The record contains no evidence that Plaintiff was terminated for any reason other than his injury and/or his claim for workers' compensation. Based on these facts, Plaintiff establishes the causal connection element of his *prima facie* claims of retaliation under the ADA and the FWCA. Defendants, therefore, are not entitled to summary judgment on Plaintiff's ADA or FWCA retaliation claims.

32

To determine whether Plaintiff is entitled to summary judgment on his retaliation claims, the Court must consider whether Plaintiff establishes the first two elements of retaliation under the ADA or the FWCA. First, it is undisputed Plaintiff suffered an adverse employment action; he easily establishes the second element of both retaliation claims. Next, Plaintiff engaged in activity protected by the FWCA when he filed a workers' compensation claim. § 440.205, Fla. Stat. (2024). Thus, Plaintiff establishes a *prima facie* case of retaliation under the FWCA.

Finally, a person engages in activity protected by the ADA when the person opposes any act or practice made unlawful by the ADA or makes a charge under the ADA. See Lucas, 257 F.3d at 1260 (citing 42 U.S.C. § 12203(a)). Plaintiff did not make a charge under the ADA until after Oakley Transport terminated him. Bothwell v. RMC Ewell, Inc., No. 04-cv-1270, 2007 WL 2254496, at *6 (M.D. Fla. Aug. 3, 2007) (citing Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (emphasis in original) (noting "any adverse employment action must occur *after* a statutorily protected expression, as a matter of law"). But Plaintiff opposed Oakley Transport's failure to authorize his knee surgery, his requested "reasonable accommodation," when he filed his workers' compensation claim. Defendants do not argue that the requested knee surgery was not a "reasonable accommodation" under the ADA. Based on the foregoing, Plaintiff establishes the first element of his *prima facie* claim of retaliation under the ADA.

Next, the Court considers whether Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's termination under the McDonnell Douglas

33

burden-shifting framework. <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Texas Dep't of Cmty. Affs. v. Burdine</u>, 450 U.S. 248, 254 (1997)). To satisfy their burden, Defendants "'need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus.'" <u>Id.</u> (emphasis in original) (quoting <u>Burdine</u>, 450 U.S. at 257).

While Defendants do not expressly argue that they have carried their burden to articulate a non-discriminatory reason, Defendants maintain generally that Oakley Transport terminated Plaintiff's employment because it believed Plaintiff agreed to voluntarily resign. Defendants support this position with evidence of Mr. Basso's representation that Plaintiff assented to the proposed settlement agreement, including his voluntary resignation, on October 23, 2019. The Court finds this evidence sufficient to allow a trier of fact to rationally conclude Plaintiff's termination was not motivated by discriminatory animus. Thus, Defendants satisfy their burden, and the burden shifts back to Plaintiff under <u>McDonnell Douglas</u>.

Plaintiff "has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." <u>Id.</u> at 1528 (citing <u>Burdine</u>, 450 U.S. at 256; <u>McDonnell Douglas</u>, 411 U.S. at 804). Plaintiff provides evidence that his termination was premature, and Oakley Transport learned the purported non-discriminatory reason for his termination had no basis in fact soon after the

termination was effected. The Court finds Plaintiff has satisfied this burden sufficient to survive summary judgment. A jury must decide whether Oakley Transport's decision to terminate Plaintiff was motivated by a desire to retaliate against him for seeking reasonable accommodations under the ADA or for filing a workers' compensation claim.

Accordingly, the parties' motions for summary judgment are **DENIED** as to Counts XIII and XVI.

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED**:

1.  Plaintiff's Motion for Partial Judgment on the Pleadings, (Dkt. 137), is **DENIED**.

2.  Defendants' Amended Motion for Summary Judgment, (Dkt. 146), is **GRANTED IN PART and DENIED IN PART**. Defendants are entitled to summary judgment on Counts I, II, III, IV, V, IX, X, XI, XII, XIV, and XV. Defendants' motion is denied as to Counts VI, VII, VIII, XIII, and XVI.

3.  Plaintiff's Motion for Partial Summary Judgment, (Dkt. 165), is **DENIED**.

4.  Within twenty-one (21) days of the date of this Order, the Parties are **DIRECTED** to file a joint notice advising the Court as to how the Parties believe this case should proceed. If appropriate, the Parties shall file an amended case management report on or before this deadline.

5.  The Clerk is directed to **STAY THIS CASE** pending the Court's receipt of

the Parties' notice.


**DONE** and **ORDERED** in Tampa, Florida, this 28th day of March 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE


**Copies furnished to:**
Counsel of Record
Any Unrepresented Person